USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/26/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JOSE SANTANA,                                               :
                                                            :   09 Civ. 05176 (JSR) (DF)
                              Petitioner,                   :
                                                            :   **REPORT AND**
        -against-                                           :   **RECOMMENDATION**
                                                            :
MR. BROWN, Acting Superintendent,                           :
Sing-Sing Correctional Facility,                            :
                                                            :
                              Respondent.                   :
                                                            :
------------------------------------------------------------X

**TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:**

*Pro Se* petitioner Jose Santana ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254, following his conviction by a jury, in New York State Supreme Court, Bronx County, of five counts of Criminal Sale of a Controlled Substance in or near School Grounds, in violation of New York Penal Law §§ 220.44[2]. (*See* Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 3354, dated Apr. 2, 2009 ("Petition" or "Pet.") (Dkt. 2), at ¶¶ 1, 5; *see also* Declaration of Brian J. Reimels in Opposition to Petition for Writ of Habeas Corpus, dated Feb. 5, 2010 ("Reimels Decl.") (Dkt. 7), at ¶ 4.) After his conviction, Petitioner was sentenced, as a second felony offender, to five concurrent indeterminate terms of imprisonment of 10 to 20 years (Pet., ¶ 4; Reimels Decl., ¶ 4), and he is currently incarcerated at Sing Sing Correctional Facility ("Sing Sing"), in Ossining, New York (*see* Pet.).

Petitioner claims that the trial court's admission, over the objection of his counsel, of allegedly irrelevant and prejudicial evidence concerning an uncharged sale of heroin by another person deprived him of a fair trial. (*See* Pet., at ¶ 13.) Respondent, the acting Superintendent of Sing Sing at the time the Petition was filed (identified by Petitioner as "Mr. Brown"), argues that

Petitioner's claims should be dismissed as not cognizable and/or without merit. For the reasons set forth below, I recommend that the Petition be dismissed.

## BACKGROUND[1]

### A. Factual Background

#### 1. "Operation Good Neighbor" and Petitioner's Arrest

Underlying this case was a police operation called "Operation Good Neighbor," to which a number of undercover officers from the Bronx Narcotics Bureau were assigned between June and November 2003. (*See* Reimels Decl., Ex. 1 (Brief for Defendant-Appellant, on direct appeal), at 2.) The operation was set up on Mount Hope Place between Anthony Avenue and Monroe Avenue, in the 46th Precinct in the Bronx, and was supervised by Sergeant Eileen Doherty. (*Id.*, at 2.) Operation Good Neighbor did not initially target specific individuals; rather, a person only became a subject of the investigation after he or she sold drugs to an undercover officer. (*Id.*, at 3.) As a result of the operation, 22 arrests were made (*id.*), including the arrest of Petitioner (*see generally id.*).

---

[1] Where possible, the facts summarized herein are taken from the transcript of Petitioner's trial ("Trial Tr."). The copy of the trial transcript that has been provided to this Court, however, is largely incomplete. Respondent states that the transcript was duly ordered from the state court (Reimels Decl., at 3 n.1), but pages 1 through 406 were apparently missing from the court's records. In the absence of a complete trial transcript, this Court has also turned to the parties' other submissions in this action, including the parties' briefs on Petitioner's direct appeal, to determine the relevant facts. As the material facts are apparently not in dispute, the Court finds that the parties' narrative recitations of those facts are sufficient to enable this Court to address Petitioner's habeas claim. *See* Rule 5 of the Rules Governing Section 2254 Cases in the U.S. District Courts ("If a transcript is neither available nor procurable, a narrative summary of the evidence may be submitted."); *see also, e.g., Douglas v. Portuondo*, 232 F. Supp. 2d 106, n.1 (S.D.N.Y. 2002) (finding that, even without a transcript of state-court proceedings, the record was sufficient to resolve petitioner's claims, particularly as the facts were not disputed).

Petitioner became a subject of this police operation after an undercover officer identified in the record as "Officer 4371" (hereinafter "UC 4371"), who was assigned to the operation, made 10 different purchases of crack cocaine in transactions in which Petitioner played either a direct or indirect role. (*See id.*, at 3 (stating that "[t]he undercover testified about ten different occasions on which he encountered [Petitioner] and purchased crack"); *see also* Respondent's Memorandum of Law, dated Feb. 2010 ("Resp. Mem."), at 2-4.) These transactions apparently led to Petitioner's being charged, in an indictment, with 10 counts of criminal sale of a controlled substance in or near school grounds, 10 counts of criminal sale of a controlled substance in the third degree, 10 counts of criminal possession of a controlled substance in the third degree, and one count of conspiracy in the fourth degree. (*See* Reimels Decl., Ex. 2 (Respondent's Brief, on direct appeal), at 3.) For each of the three types of drug charges against Petitioner, eight of the 10 counts were charged individually, and two were based on acts allegedly taken in concert with others. (*See id.*)

### 2. The Undercover Officer's Purchase of Heroin from Joe Mary Nunez[2]

Two of the counts of the Indictment against Petitioner were based on a drug transaction that occurred on July 2, 2003, at about 8:15 p.m. (*See* Reimels Decl., Ex. 1, at 9-10.) At that time, UC 4371 had approached Petitioner and bought 10 ziplock bags of crack from him, for 100 dollars. (*Id.*) According to the undercover's testimony, however, a teenaged girl named Joe Mary Nunez ("Nunez") arrived at the time of that sale, and told him that she had seen him on another block on a prior occasion and that she knew he bought "dope" there – which UC 4371

---

[2] In the papers that have been submitted to this Court Ms. Nunez's first name is variously spelled as "Joe Mary," "Joe Marie," "Jhowmary," "Mary," and "Johmary." (*See* Reimels Decl., Ex. 1, at 3, 4; Reimels Decl., Ex. 2, at 4; Trial Tr., at, *e.g.*, 496, 1113.)

understood to mean heroin. (*Id.*, at 10; *see also* Reimels Decl., Ex. 2, at 4 (describing Nunez as a "teenaged girl").) According to UC 4371, Nunez then said, "[W]e have dope also" (Reimels Decl., Ex. 1, at 10), and the undercover proceeded to make a purchase of heroin from her, at that time (*see id.*).

Nunez was originally charged as one of Petitioner's co-defendants, although her case was eventually transferred to Family Court. (*See* Reimels Decl., Ex. 2, at 3 n.1; *see also* Resp. Mem., at 6).

**B.     Procedural History**

**1.     Relevant Rulings of the Trial Court**

In addition to testifying at trial about the events of July 2, 2003 (involving his purchase of crack from Petitioner and of heroin from Nunez), UC 4371 also testified regarding another, separate encounter he had with Nunez, on July 5, 2003. (*See* Reimels Decl., Ex. 1, at 11-12.) Although the prosecution contended that such testimony was relevant to the conspiracy charge against Petitioner, the Court sustained defense counsel's objection to the testimony on relevance grounds, and instructed the jury to disregard the undercover's testimony regarding any events of July 5. (*See id.*)

Subsequently, Petitioner's trial counsel argued that the undercover's testimony regarding Nunez's sale of heroin on July 2 should have been similarly excluded as irrelevant and unduly prejudicial to Petitioner. (Trial Tr., at 496-99.) On this point, though, the prosecutor argued that the July 2 heroin sale by Nunez was "virtually contemporaneous" to Petitioner's sale to the undercover officer, and that the prosecution had elicited the testimony in order "to show that Nunez was [Petitioner's] girlfriend and because it went to the undercover's ability to identify Nunez as a co-conspirator." (*Id.* at 497-99.)

4

The court concluded that the testimony regarding the transaction on July 2 was of a different character than the excluded testimony regarding the events of July 5, when Petitioner was not present. (*Id.* at 499.) The court allowed the undercover's testimony regarding Nunez's July 2 heroin sale "for the sake of completeness of what happened during that transaction, that might have made it last the length of time it did, the recognition of each party of each other." (*Id.*) The court stated that, if requested by Petitioner's counsel, it would give the jury a curative or limiting instruction, during the final jury charge. (*See id.* at 499-500.) Counsel took exception to the court's ruling, arguing that there was ample testimony regarding interactions between Petitioner and Nunez to support the conspiracy charge, but that heroin might be more offensive to the jury than crack, and thus the evidence of the heroin sale might poison the jury against Petitioner. (*Id.* at 500-01.) Despite this argument, the court declined to reconsider its evidentiary ruling, noting that, without the testimony regarding Nunez's role on July 2, it could not yet be determined whether there was enough evidence in the record to prove a conspiracy. (*See id.*) Further, the court noted that the undercover's testimony regarding Nunez's involvement on July 2 corroborated other evidence regarding both the length of the transaction and the ability of the parties to recognize one another on prior occasions. (*See id.*) The court therefore concluded that the testimony in question had some "relevant purpose before the jury." (*Id.*)

At a charging conference held by the trial judge at the conclusion of trial, the court granted a motion by the prosecution to dismiss the conspiracy charge against Petitioner, as well as all of the drug-possession counts. (*Id.* at 1035-36.) This left only the drug-sales counts, and the court determined that, for each of the 10 alleged sales, it would submit two counts to the jury, in the alternative: criminal sale of a controlled substance in or near school grounds, and criminal

5

sale of a controlled substance in the third degree. (*See id.* at 1036.) The court also granted Petitioner's counsel's request for a limiting instruction regarding any testimony heard by the jury regarding drug transactions between the undercover and other individuals (id. at 1037-38), and, during its charge, the court proceeded to instruct the jury as follows:

> Now, Jurors, during the course of the testimony during the trial you heard testimony of alleged drug sales between the undercover officer and the other individuals. The defendant is not charged with these alleged drug sales and that testimony has no bearing on the charges that you are considering as to this defendant and you must not consider that testimony for that purpose.

(*Id.* at 1147.)

### 2. **Petitioner's Conviction and Sentence**

On November 28, 2005, the jury found Petitioner guilty of five counts of criminal sale of a controlled substance in or near school grounds; as to the remaining charges, the jury either acquitted Petitioner or was unable to reach a verdict. (*See id.* at 1318-22; Reimels Decl., Ex. 1 at 23.) On motion by the prosecution, the court dismissed the charges as to which the jury had deadlocked. (Trial Tr. at 1332.) The court also denied Petitioner's motions to set aside his conviction as against the weight of the evidence or as inconsistent with the jury's acquittals on other charges. (*Id.* at 1336-37.)

On February 23, 2006, Petitioner was sentenced, as a second felony offender, to five concurrent indeterminate terms of imprisonment of 10 to 20 years.[3] (Reimels Decl., Ex. 1 at 24.)

---

[3] Petitioner's sentencing transcript is also missing from the record, although the facts are again not in dispute.

3.     **Direct Appeal**

On direct appeal to the Appellate Division, First Department, Petitioner raised two arguments – that the admission of evidence concerning the July 2 drug sale by Nunez deprived Petitioner of a fair trial, in violation of his federal due process rights, and that Petitioner's sentence was excessive. (*See* Reimels Decl., Ex. 1.) On February 14, 2008, the Appellate Division unanimously affirmed Petitioner's conviction. *See People v. Santana*, 852 N.Y. Supp. 2d 73 (1st Dep't 2008). As to Petitioner's claim regarding the improper admission of evidence of Nunez's sale, the court held:

> Testimony regarding a narcotics sale by a codefendant in defendant's presence did not deprive defendant of a fair trial. The evidence in question was relevant to a conspiracy count in the indictment that was still pending at that point in the trial, and the evidence of the codefendant's conduct was not prejudicial to defendant (*see People v Delacruz*, 24 AD3d 109 [2005], *lv denied* 6 NY3d 775 [2006]). Furthermore, the court's limiting instruction was sufficient to prevent any possibility of prejudice.

*Id.*, at 74. The court also rejected Petitioner's excessive-sentence claim, "perceiv[ing] no basis for reducing [his] sentence." *Id.*

Petitioner sought leave to appeal to the New York Court of Appeals, but states in his Petition that he is unaware of the grounds raised in that application, as his attorney "never sent [him] a copy of the Leave to Appeal application." (Pet., at ¶ 10(f)(1), (5).) In any event, on April 23, 2008, the Court of Appeals denied Petitioner leave to appeal. *People v. Santana*, 10 N.Y.3d 844 (2008). Petitioner did not petition the Supreme Court for a writ of certiorari. (*See* Pet., at ¶ 10(f)(g); Reimels Decl., at ¶ 7.)

### 4. Habeas Petition

Petitioner timely filed his habeas Petition in this Court on April 2, 2009. (*See* Pet.)[4] In his Petition, Petitioner raises only one claim, that his "[r]ight to a [f]air trial was violated by the admission of prejudicial evidence," in violation of his 14th Amendment rights. (Pet., at ¶ 13.) Presumably, as noted above, this refers to the trial court's admission of evidence of Nunez's July 2, 2003 sale of heroin to the undercover officer.

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

#### A. Exhaustion

A federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "opportunity to pass upon and correct alleged violations of . . . [a] prisoner's federal rights." *Picard*, 404 U.S. at 275 (citation omitted). Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is generally fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citation omitted).

---

[4] Although the Court's docket reflects a filing date of June 3, 2009 for the Petition (Dkt. 2), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Here, the Petition contains a statement by Petitioner, made under penalty of perjury, that he delivered the Petition to prison authorities on April 2, 2009, to be mailed to this Court. (*See* Pet., at 6.) Accordingly, the Court deems April 2, 2009 to be the date of filing.

The petitioner bears the burden of demonstrating that his claims have been fully exhausted before being asserted on federal habeas. *See, e.g., Hooks v. Greene*, No. 04 Civ. 297 (SAS), 2005 U.S. Dist. LEXIS 20295, at *7 (S.D.N.Y. Sept. 16, 2005) ("On a petition for habeas corpus relief, it is the petitioner's burden to prove that he has fully exhausted his state court remedies." (citing *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)); *see also Johnson v. Ricks*, No. 9:02-CV-1366 (NPM), 2007 U.S. Dist. LEXIS 79935, at *38 n.15 (N.D.N.Y. Oct. 29, 2007) (citing cases). Nevertheless, the Court need not always reach a complicated question of exhaustion, as "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also, e.g., Barnes v. Burge*, 372 F. App'x 196, 199 (2d Cir. 2010) (denying habeas petition on merits after noting that "record does not reveal" whether claim was exhausted); *Nunez v. Conway*, No. 10 Civ. 0060 (JGK), 2013 U.S. Dist. LEXIS 20372, at *24-25 (S.D.N.Y. Feb. 14, 2013) (noting that "even though exhaustion is a prerequisite to granting a petition for habeas corpus, an application may be denied on the merits, notwithstanding a failure to exhaust state court remedies").

B.     **Standard of Review**

Where a federal constitutional claim has been adjudicated on the merits by the state court, this Court must accord substantial deference to the state court's decision under the standard of review dictated by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254(d). The relevant section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved

> an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003). The state court's decision, however, "must have been more than incorrect or erroneous"; rather, "[t]he state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams v. Taylor*, 529 U.S. at 409). Under this "difficult to meet" standard, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). In order to be entitled to habeas relief, the petitioner must show that "the state court's ruling on the claim being presented in federal court was so lacking in

10

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-87.[5]

Where this Court reaches the merits of a claim that has not been decided by the state court on substantive grounds, or where this Court considers the merits of a claim that was not fully exhausted in the state courts, the pre-AEDPA *de novo* standard of review applies. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003); *see also, e.g., Rodriguez v. Bradt*, No. 09 Civ. 10285 (LTS) (DF), 2011 U.S. Dist. LEXIS 150398, at *27 (S.D.N.Y. Sept. 13, 2011) ("Where . . . this Court decides to consider the merits of an unexhausted claim, an inadequate basis exists for deference to the state court, and thus the Court considers such a claim *de novo*."), *adopted by* 2011 U.S. Dist. LEXIS 148077 (Dec. 23, 2011).

## II. PETITIONER'S CLAIM

### A. Petitioner Has Not Demonstrated That His Claim Is Fully Exhausted

As a preliminary matter, Petitioner has not satisfied his burden of showing that he has fully exhausted his habeas claim. As set out above, Petitioner raised two claims before the Appellate Division on his direct appeal, including an excessive-sentence claim and the due process claim he now raises here. (*See supra* at 7.) As to the due process claim, Petitioner

---

[5] The Supreme Court has emphasized that "clearly established [f]ederal law" refers only to the "'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. at 412); *see also Rodriguez v. Miller*, 537 F.3d 102, 106-07 (2d Cir. 2008) ("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions."). Thus, a principle of constitutional law "grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot provide the basis for habeas relief. *Id.* (citing *Musladin*); *see also Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." (internal quotation marks omitted)).

presented his arguments to the Appellate Division in constitutional terms, sufficient to apprise that court of the federal nature of the claim. (*See* Riemels Decl., Ex. 1.) Petitioner, however, states in his habeas Petition that he has no knowledge as to whether his appellate counsel also raised this due process claim in her letter seeking leave to appeal to the Court of Appeals. (*See* Pet., at ¶ 10(f)(5).) Neither party has now provided this Court with a copy of that leave application, and, as leave to appeal to the Court of Appeals was denied without opinion, *see Santana*, 10 N.Y.3d 844, this Court cannot ascertain whether Petitioner actually raised his due process claim to the highest state court that could review it, as is necessary for complete exhaustion, *see Bossett*, 41 F.3d at 828.[6]

If Petitioner did not actually raise his due process claim to the Court of Appeals in his request for leave to appeal, then the claim would be procedurally barred from review by this Court. More particularly, the claim would be deemed exhausted (as Petitioner would no longer have any available avenue for exhausting the claim at this point), and thus procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996) (holding that, where a habeas claim is deemed exhausted because of a state procedural bar, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim"); *see also*

---

[6] While not explicitly addressing the issue of exhaustion, Respondent appears to assume that Petitioner's claim was fully exhausted on his direct appeal. This is not, however, sufficient to constitute the type of "express" waiver of exhaustion that should be held to be binding on the State. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement"); *cf. Cornell v. Kirkpatrick*, 665 F.3d 369, 376 (2d Cir. 2011) (holding State's "unequivocal[]" waiver of exhaustion, even if "erroneous[]," constituted "express" waiver under AEDPA); *Carvajal v. Artus*, 633 F.3d 95, 106 (2d Cir. 2011) (an "equivocal" concession of exhaustion is not an "express" waiver).

12

*Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 633 (2d Cir. 2001). Given the unresolvable factual uncertainty regarding exhaustion, I recommend that, in any event, Petitioner's federal claim be dismissed as non-cognizable in this proceeding, or as without merit, under 28 U.S.C. § 2254(b)(2).

**B.      In Any Event, Petitioner's Claim Is Not Cognizable or Is Without Merit.**

Mere errors of state evidentiary law are not cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted). This Court may only review a state court's evidentiary ruling if it was so egregious that it rendered the petitioner's trial fundamentally unfair, in violation of his constitutional right to due process. *See Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973); *see also Dowling v. United States*, 493 U.S. 342, 352 (1990) (noting that the improper introduction of evidence against a defendant does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." (internal quotation marks omitted)); *Rosario v. Kuhlman*, 839 F.2d 918, 924-25 (2d Cir. 1988) ("[E]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ [should] issue *only* where [the] petitioner can show that the error deprived [him] of a *fundamentally fair* trial.") (emphasis in original) (quotation marks and citation omitted); *Copes v. Schriver*, No. 97 Civ. 2284 (JGK), 1997 U.S. Dist. LEXIS 16349, at *8 (S.D.N.Y. Oct. 22, 1997) (explaining that a habeas petitioner "must demonstrate that the alleged evidentiary error violated an identifiable constitutional right, and, in doing so, a petitioner bears

13

a heavy burden because evidentiary errors generally do not rise to constitutional magnitude") (citation omitted).

Where allegedly prejudicial evidence is "probative of [an] essential element in the case, its admission does not violate the defendant's right to due process." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (internal quotation marks and citation omitted). Further, the admission of evidence of uncharged criminal activity (including the activity of individuals other than the defendant) to complete the narrative of events and provide context does not offend the Constitution; indeed, the admission of such evidence has been held to be proper under both federal and state law. *See, e.g., United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (holding that "evidence of uncharged criminal activity" may be properly admitted where, for example, "it is necessary to complete the story of the crime on trial") (internal quotation marks and citation omitted); *Marrero v. Senkowski*, 01 Civ. 5867 (HB) (FM), 2003 U.S. Dist. LEXIS 12984, at *31 (S.D.N.Y. July 25, 2003) (noting that, "under New York law, uncharged crimes evidence may be admitted when it is inextricably interwoven with the narrative of events"), *adopted by* 2003 U.S. Dist. LEXIS 13003 (S.D.N.Y. July 28, 2003); *People v. Rivera*, 557 N.Y.S.2d 126, 127 (2d Dep't 1990) (finding, in context of a "buy and bust" operation that led to defendant's arrest, that admission of evidence of criminal activity that did not involve the defendant "was proper to complete the narrative of events leading up to the defendant's arrest"). "For the erroneous admission of . . . unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992)); *accord Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985).

In his Petition, Petitioner is apparently seeking to challenge the trial court's evidentiary ruling that permitted the jury to hear testimony regarding Nunez's July 2, 2003 heroin sale to the undercover officer. To the extent Petitioner is seeking to challenge this ruling under state law, his claim is not cognizable in this federal proceeding. *Estelle*, 502 U.S. at 68. Moreover, even if Petitioner is challenging his conviction on federal constitutional grounds, he cannot show that the ruling at issue rendered his trial so unfair as to have violated his federal due-process rights.

First, the admitted evidence involved a drug sale that, according to the undercover's testimony, followed immediately on the heels of Petitioner's own drug sale, at the same location, and the testimony was thus probative on the question of whether Petitioner and Nunez were co-conspirators. As the conspiracy charge against Petitioner had not yet been dismissed, the evidence was, as the Appellate Division found, relevant to a charge on which Petitioner was then being tried. *See Santana*, 852 N.Y. Supp. 2d at 74. As such, the ruling did not violate the 14th Amendment.

Second, although the conspiracy count against Petitioner was dismissed prior to the jury being charged, the evidence was, in any event, relevant "to complete the narrative" of events relating to Petitioner's commission of a crime. *See, e.g., Carboni*, 204 F.3d at 44. In fact, the trial court's expressed reasons for allowing the jury to consider the testimony – including that the testimony was relevant to issues regarding the time and length of the nearly contemporaneous transactions, and to the parties' recognition of one another – all show that the court was allowing the undercover officer to provide a full narrative regarding the events at issue.

Third, the trial court gave the jury a limiting instruction that made clear that the undercover's testimony regarding the Nunez sale "ha[d] no bearing" on the charges against Petitioner that were then being placed before the jury, and that the jury was not to consider that

15

testimony in connection with those charges. (Trial Tr. at 1147.) This Court may presume that the jury followed that instruction in reaching its verdict. *See Herring v. Meachum*, 11 F.3d 374, 378 (2d Cir. 1993) (citing *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)); *see also Richardson v. Marsh*, 481 U.S. 200, 208, 211 (1987) (explaining that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions); *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993) (emphasizing that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions") (internal quotation marks omitted)). The instruction in this case was clear, and it was sufficient to alleviate any prejudice or confusion arising from the admitted testimony.

Most importantly, Petitioner does not even appear to be arguing that the evidence of the Nunez transaction was "sufficiently material to provide the basis for [Petitioner's] conviction or to remove a reasonable doubt that would have existed on the record without it," *Johnson*, 955 F.2d at 181, as would be necessary to state a constitutional due-process claim. At best, Petitioner is apparently seeking to argue, as he did before the Appellate Division, that, by allowing the jury to hear that Nunez sold *heroin* to the undercover, the trial court prejudiced Petitioner because the jury might have deduced, from that evidence, that Petitioner "was part of an 'all purpose' drug operation, that not only sold crack but also sold heroin." (Reimels Decl., Ex. 1, at 28-29.) Nothing about this argument suggests that the evidence in question was material to Petitioner's conviction on particular cocaine charges, or that it removed otherwise existent "reasonable doubt" as to whether Petitioner had engaged in the sale of cocaine at or near school grounds. Any argument by Petitioner that the evidence improperly suggested "guilt by association" ignores the independent evidence in the record of Petitioner's own drug

transactions, which provided a basis for Petitioner's conviction on five separate counts. (*See generally* Reimels Decl., Ex. 2, at 5-11.) Further, the very fact that the jury acquitted Petitioner on other, similar charges supports the conclusion that the jury was able to parse the evidence and only convict where a conviction was warranted.

Under the circumstances, even on *de novo* review, the purported error by the trial court cannot be said to have rendered Petitioner's trial fundamentally unfair, so as to have violated his right to due process. Certainly, if this Court were to assume that Petitioner fully exhausted his claim, and were thus to afford deference, under AEDPA, to the Appellate Division's decision, Petitioner could not prevail on his claim. Nothing in the Appellate Division's decision, rejecting Petitioner's claim, is contrary to, or reflects an unreasonable application of federal law, as established by the Supreme Court in the cases cited above.

Accordingly, I recommend that the Petition be DISMISSED.

## CONCLUSION

For all of the foregoing reasons, I recommend that Petitioner's petition for a writ of habeas corpus be dismissed in its entirety. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (adding three days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States Courthouse, 500 Pearl Street, Room 1340, New York, New York 10007, and to the chambers of the undersigned, United States

17

Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN 14 DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If Petitioner does not have access to cases cited herein that are reported on Westlaw, he may request copies from Respondents' counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the pro se litigant with copies of such unpublished cases and other authorities as are cited in a decision of the Court and were not previously cited by any party.").

Dated: New York, New York
       February 26, 2013

Respectfully submitted,

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. Jed S. Rakoff, U.S.D.J.

Mr. Jose Santana
06-A-1477
Upstate Correctional Facility
PO Box 2001
Malone, NY, 12953

Respondent's counsel, via ECF